IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: WILLIAM AND CARMEN JACOBO,<br>　　　　Appellants,<br>　　v.<br>BAC HOME LOANS SERVICING, LP,<br>　　　　Appellee. | CIVIL NO. 11-5134(NLH)<br><br>**OPINION** |

**APPEARANCES:**
NICHOLAS S. HERRON
LAW OFFICES OF SEYMOUR WASSERSTRUM
205 W. LANDIS AVE.
VINELAND, NJ 08360
*On behalf of Appellants*

GEORGE M. PANGIS
STERN, LAVINTHAL, FRANKENBERG & NORGAARD, LLC
184 GRAND AVENUE
ENGLEWOOD, NJ 07631-3507
*On behalf of Appellee*

**HILLMAN, District Judge**

### I.  INTRODUCTION

Before the Court is a bankruptcy appeal from an Order "Declaring Attempted Cram Down Ineffective, Granting Access to Property for Purposes of Conducting an Appraisal, Compelling Turnover of Documents from the Debtors and for Establishment of a Plenary Hearing to Determine Proper Valuation of Property Including Interest" ("Bankruptcy Order") entered on August 5, 2011, by the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court").  For the reasons expressed below, the Order entered by the Bankruptcy Court will be affirmed.

**II.  BACKGROUND**

On February 23, 2006, Bank of America ("BOA") issued an adjustable rate, interest only loan to William and Carmen Jacobo ("appellants") on a condominium located in Mays Landing, New Jersey (Mays Landing condominium), in the amount of $106,200.  On November 23, 2010, the appellants filed a petition for Chapter 13 bankruptcy and plan of reorganization.  One of the listed secured creditors was BOA, and the appellants' schedule A listed the condominium valued at $63,000, with a secured lien in the amount of $103,085.

On November 24, 2010, the Bankruptcy Court issued a notice to creditors of the appointment of a trustee, along with notice of hearing on the confirmation plan, as well as deadlines to file a complaint to determine dischargeability of certain debts set for March 15, 2011, and proof of claims set for April 14, 2011.  On November 26, 2010, the Bankruptcy Court issued a certification of notice serving BOA at two different addresses, as well as electronic notice.  The two addresses listed with the Court were: BAC Home Loans/Countrywide 450 American Street, #SV416 Simi Valley, CA 93065, and Bank of America, 4161 Piedmont Pkwy NC4-105-01-34, Greensboro, NC 27410-8119.

On December 17, 2010, appellants sent BOA, by regular mail, a copy of the Chapter 13 plan and motion, and the required Chapter 13 transmittal letter to the two listed addresses for BOA stating the caption of the bankruptcy proceeding and notice that

2

they should consult an attorney as their rights were subject to being modified. The letter also specified the date, time and location of the confirmation hearing.

On February 23, 2011, a confirmation hearing was held. The proposed Chapter 13 reorganization called for the secured portion of BOA's mortgage to be "crammed down" to the appellants' valuation of the property, $63,000, with the remaining $40,085 to be reclassified as unsecured. The appellants also proposed to pay zero percent (0%) interest on the secured portion of the claim. No creditors appeared and the case was marked as confirmed. The next day, an order confirming the plan was filed on the bankruptcy docket.

On March 29, 2011, a notice of appearance and request for service was filed on behalf of counsel for BOA in connection with a lien held on appellants' primary residence (for which BOA also held the mortgage).[1] On May 10, 2011, attorney for BOA filed a notice of appearance and request for service in connection with the Mays Landing condominium. On July 12, 2011, with regard to the condominium, BOA filed a Motion to Declare Attempted Cram Down Ineffective, Granting Access to Property for Purposes of Conducting an Appraisal, Compelling Turnover of Documents from the Debtors and for Establishment of a Plenary Hearing to Determine Proper

---

[1] It appears the Mays Landing condominium was appellants' second home or vacation home.

Valuation of Property Including Interest ("motion").

A hearing on the motion was held on August 2, 2011 before the Bankruptcy Court.  The Bankruptcy Court found that although BOA had actual notice, appellants failed to properly serve BOA in violation of BOA's due process rights.  The Bankruptcy Court granted BOA's motion on August 5, 2011.  Appellants filed a timely notice of appeal.

### III.  DISCUSSION

#### A.  Final Orders and Interlocutory Appeals

Appellants argue that the Bankruptcy Order entered on August 5, 2011 is a final, appealable order and that this Court exercises mandatory jurisdiction to hear appeals from final orders of bankruptcy judges pursuant to 28 U.S.C. § 158(a)(1).  Appellee argues that the Bankruptcy Order is interlocutory and, therefore, not appealable.

The Supreme Court defined a "final decision" for purposes of appeal "generally [as] one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945).  The finality of a bankruptcy order, however, is viewed in more practical terms.  An appeal from a bankruptcy order under § 158(d)(1)[2] is viewed "in a more pragmatic

---

[2]  See 28 U.S.C.A. § 158(d)(1) (Bankruptcy appeals), stating in relevant part "The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments,

4

and less technical way" than it would under 28 U.S.C. § 1291.[3]  In re Marcal Paper Mills, Inc., 650 F.3d 311, 314 (3d Cir. 2011) (citing F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.), 844 F.2d 99, 103 (3d Cir. 1988)); In re Meyertech Corp., 831 F.2d 410, 414 (3d Cir. 1987) ("Analysis of finality in [bankruptcy] proceedings differs from litigation in an ordinary civil matter. In bankruptcy matters we have consistently considered finality in a more pragmatic and less technical sense than in other matters and the concept, for purposes of appellate jurisdiction, should be viewed functionally.").

The Third Circuit outlined three factors to determine whether a bankruptcy order is final: (1) "the impact of the matter on the assets of the bankruptcy estate," (2) "the preclusive effect of a decision on the merits," and (3) "whether the interests of judicial economy will be furthered."  Marcal Paper Mills, 650 F.3d at 314.  "The 'most important' of these factors is the impact upon the assets of the bankrupt estate."  In re Market Square Inn, Inc., 978 F.2d 116, 120 (3d Cir. 1992) (citations omitted).

By deeming the "cram down" ineffective and ordering a

---

orders, and decrees ... ."

[3]    See 28 U.S.C.A. § 1291 (Final decisions of district courts), stating in relevant part "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court."

5

valuation hearing of the property, the order entered by the Bankruptcy Court impacts the assets in the bankruptcy estate.[4] Also, the appeal would require this Court to address a discrete question of law concerning due process that could have a preclusive effect as to confirmation of the plan. See In re Armstrong World Industries, Inc., 432 F.3d 507, 511 (3d Cir. 2005). Finally, the interests of judicial economy will be furthered by deciding this issue now. See Marcal Paper Mills, 650 F.3d at 314.

However, even if the order is not considered final because the valuation of the property is pending,[5] the order is appealable under the collateral order doctrine. There is no standard under section 158(a) for determining whether to exercise discretion in granting leave to appeal interlocutory bankruptcy orders. In re Marvel Entm't Group, Inc., 209 B.R. 832, 837 (D.Del.

---

[4] The parties provide no argument concerning the appellants' assets or how the bankruptcy order affects the assets. Based on the Court's review of their bankruptcy petition, appellants checked off that their estimated assets are between $100,000 - $500,000. They have listed their real property as the condominium in Mays Landing, NJ with a value of $63,000, and secured claim in the amount of $103,085, and also their residence at Egg Harbor City, NJ, with a value of $248,000, and secured claim in the amount of $321,400. Based on the appellants' schedule of assets, their real property makes up the bulk. Thus, the condominium at issue is a significant asset.

[5] The issue on appeal is whether appellants violated BOA's due process rights, not the valuation of the property, which is why the order is final and appealable as of right. Nonetheless, given that the order potentially affects the valuation of the property, we also conclude that it is appealable as an interlocutory order.

1997). Based upon the decision of the Third Circuit in Bertoli v. D'Avella (In re Bertoli), 812 F.2d 136, 139 (3d Cir. 1987), courts within this Circuit confronted with the decision whether to grant leave to allow an interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal. Id. (rejecting certification requirement for interlocutory appeals from bankruptcy court to district court); see In re SemCrude, L.P., 407 B.R. 553, 556 (D. Del. 2009) (citing In Re Magic Restaurants, Inc., 202 B.R. 24, 25 (D. Del. 1996)). Leave to file an interlocutory appeal may be granted when the order at issue: (1) involves a controlling question of law; (2) upon which there is substantial grounds for difference of opinion as to its correctness; and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. SemCrude, 407 B.R. at 556-57 (citing Katz v. Carte Blanche Corporation, 496 F.2d 747, 754 (3d Cir. 1974)).

A court's discretion to grant or deny an interlocutory appeal is not limited by this test, however. "Leave to file an interlocutory appeal may be denied for reasons apart from this specified criteria, including such matters as the appellate docket or the desire to have a full record before considering the disputed legal issue." Id. (citation omitted). Moreover, because an interlocutory appeal "represents a deviation from the basic judicial policy of deferring review until the entry of a final

7

judgement, the party seeking leave to appeal an interlocutory order must also demonstrate that exceptional circumstances exist." <u>Id.</u> (finding decision classifying the post-petition portion of withdrawal liability as an administrative expense was final) (citation omitted).

This Court concludes that if the Order of the Bankruptcy Court is not final, we would grant leave to file an interlocutory appeal in this matter because the issue - whether due process requires conformance with the bankruptcy rules regarding service even when the party has actual notice - involves a controlling question of law.  As set forth below, there exists substantial grounds for difference of opinion over this issue, and a decision will materially advance the ultimate termination of the litigation. <u>See</u> <u>In re SemCrude</u>, 407 B.R. at 556-57.

### B. Due Process

Appellants argue that due process was satisfied because BOA had "actual notice" of the Chapter 13 plan and confirmation hearing.  BOA argues that its due process rights were violated because appellants failed to follow proper procedure resulting in defective service which was the cause of BOA's failure to timely file an opposition to the appellants' property valuation.

Since the Supreme Court decided <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), it has been relied upon when "confronted with questions

8

regarding the adequacy of the method used to give notice." See Rago v. City of Pittsburgh, 429 Fed.Appx. 86, 88-89 (3d Cir. 2011). Therefore, following Mullane, the question in this case is whether the notice was "reasonably calculated under all the circumstances" to apprise BOA of the bankruptcy and hearing. See Foehl v. U.S., 238 F.3d 474 (3d Cir. 2001) (stating that "[n]otice by mail or other means as certain to insure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of [a] party ... if its name and address are reasonably ascertainable.").

Here, appellants were required to provide notice of the Chapter 13 plan and hearing to BOA, a creditor.[6] Appellants' Chapter 13 plan called for "cramming" or "stripping" down BOA's secured claim. In a Chapter 13 proceeding, a debtor may modify a secured claim of a creditor through a process referred to as "lien stripping." See 11 U.S.C. § 1322. Federal Rule of Bankruptcy Procedure 3012 permits the court to "determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct." Bankruptcy courts have held that a Rule 3012 motion

---

[6] "[I]n a contested matter, [as here,] the notice of hearing is treated as a summons and the motion is treated as a complaint." In re Kalikow, 602 F.3d 82, 92 (2nd Cir. 2010) (citing In re Parker, 392 B.R. 490, 496 (Bankr.D.Utah 2008)).

9

to strip down a lien is an adversary proceeding as defined under Rule 9014. See In re Millspaugh, 302 B.R. 90, 101 (Bkrtcy.D.Idaho 2003) ("While Rule 3012 does not expressly incorporate Rule 9014, the Court concludes that the sort of relief at issue when secured claims are valued, including stripping those creditors' liens down or off, constitutes a contested matter."). In turn, Rule 9014 specifically references Rule 7004.[7] Id. ("Rule 9014, by direct internal reference, requires service in contested matters to be made consistent with Rule 7004.") (citations omitted).

Under Rule 7004,

> Service on an insured depository institution (as defined in section 3 of the Federal Deposit Insurance Act)[8] in a contested matter or adversary proceeding shall be made by certified mail addressed to an officer of the institution unless --
> (1) the institution has appeared by its attorney, in which case the attorney shall be served by first class mail;
> (2) the court orders otherwise after service upon the institution by certified mail of notice of an application to permit service on the institution by first class mail sent to an officer of the institution designated by the institution; or
> (3) the institution has waived in writing its entitlement to service by certified mail by designating an officer to receive service.

---

[7] Rule 9014 concerns contested matters and states that relief in a contested matter shall be made by motion and that the motion "shall be served in the manner provided for service of a summons and complaint by Rule 7004." See Fed.R.Bkrpt.P. 9014.

[8] There is no dispute that BOA qualifies as a insured depository institution. See In re McCumber, 2012 WL 893061, at (Bkrtcy.D.Alaska March 7, 2012) ("Bank of America is an insured depository institution.").

Fed.R.Bkrpt.P. 7004(h).

Rule 7004(h) requires that service be made by certified mail on an "officer of the institution."  Courts have interpreted this rule as imposing more stringent requirements for service by specifying that service be made on an officer rather than an agent. See In re Hamlett, 322 F.3d 342, 346 (4th Cir. 2003).  "A comparison of Rule 7004(h)'s language with that of other federal rules governing service of process on non-governmental entities and corporations clearly evidences a Congressional intent to fashion more rigorous service of process requirements for adversary proceedings initiated against insured depository institutions." Id.  Rule 7004(h) reflects the balance between the efficiency of permitting a debtor to mail notice to a creditor with safeguards to ensure creditors receive proper notice.  See In re Ultrasonics, Inc., 269 B.R. 856, 861 (Bkrtcy.D.Idaho 2001) (Congress "[i]n recognition of the time constraints in bankruptcy proceedings and to insure simple and expeditious service of defendants to such proceedings" permitted service by mail); In re Millspaugh, 302 B.R. 90, 102 n. 24 (Bkrtcy.D.Idaho 2003) ("When so much of the daily diet of bankruptcy practice is handled by 'notice and hearing' under § 102(1), and on the nonappearance or nonobjection of a party who has been provided an opportunity to appear or object, it is appropriate that both the Court and counsel for the proponent pay heed to the requirements of proper service."); In re M & L Business

Mach. Co., Inc., 190 B.R. 111, 115 (D.Colo. 1995) ("In light of the comparatively lenient procedure in bankruptcy, persons effecting service must provide correct notice in accord with the Rules.").

Appellants' service on BOA of the Chapter 13 confirmation plan and notice of the hearing intending to cram or strip down BOA's secured lien was clearly deficient. Appellants did not mail the documents via certified mail addressed to an officer of BOA, and none of the outlined exceptions to Rule 7004(h) apply. See In re McCumber, 2012 WL 893061, at *1 (Bkrtcy.D.Alaska March 7, 2012) (finding service on Bank of America by mail at two different addresses was deficient because the envelopes were neither sent by certified mail nor addressed to an officer of the institution).

Appellants do not appear to dispute that service on BOA was not in accordance with the Bankruptcy rules. Rather, appellants argue that since the Bankruptcy Court found that BOA received "actual notice," that violation of the bankruptcy rules in this case does not also violate due process requirements. In support of their argument, they rely on a recent case decided by the Supreme Court, United Student Aid Funds, Inc. v. Espinosa, 130 S.Ct. 1367 (2010).

In Espinosa, the clerk of the Bankruptcy Court mailed notice and a copy of Espinosa's plan to United Student Aid Funds, Inc. ("United"), the creditor to whom Espinosa owed student loan debt. Id. at 1374. United received the notice and filed a proof

12

of claim. Id. United did not object to the plan's proposed discharge of Espinosa's student loan interest nor did it object to Espinosa's failure to initiate an adversary proceeding. Id. In May 1993, the Bankruptcy Court confirmed Espinosa's plan and the Chapter 13 trustee mailed United a form notice advising United that the amount of the claim filed differed from the amount listed for payment in the plan and that if United wanted to dispute the treatment of the claim, it was required to notify the trustee within 30 days. Id. United did not respond to that notice. Id. In May 1997, Espinosa completed the payments on his student loan principal and the Bankruptcy Court discharged Espinosa's student loan interest. Id. In 2000, United sought to set aside the Bankruptcy Court's 1993 order confirming Espinosa's plan arguing that its due process rights had been violated because Espinosa failed to serve it with the summons and complaint required by the Bankruptcy Rules for an adversarial proceeding. Id. at 1374-75.

      The Supreme Court found that Espinosa's failure to properly serve United deprived United of a right granted by a procedural rule. Id. at 1378. However, the Supreme Court decided that "this deprivation did not amount to a violation of United's constitutional right to due process." Id. (finding that due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

13

objections.") (citing Mullane, 339 U.S. at 314; Jones v. Flowers, 547 U.S. 220, 225, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006)).  The Supreme Court found that United received "actual notice of the filing and contents of Espinosa's plan" which "more than satisfied United's due process rights."  Id.

The Supreme Court cautioned that the right to appeal a judgment that may be void pursuant to Rule 60(b)(4) "does not provide a license for litigants to sleep on their rights."  Id. at 1380.  The Supreme Court held, that where "a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief."  Id.

The facts in this case are distinguishable from the facts in Espinosa.  Unlike in Espinosa where United failed to raise a timely objection after it filed a proof of claim, here, there is no evidence that BOA filed a proof of claim.  Rather, shortly after the confirmation hearing, BOA filed an entry of appearance and motion challenging the cramming down of the debt on the condominium.  In Espinosa, it was seven years after the plan was confirmed that United sought to have the plan voided.  By that time, Espinosa had, three years prior, already paid off the underlying debt.  Here, BOA responded in a matter of weeks.  The

14

stark contrast with this case and Espinosa is that BOA did not "sleep on their rights."

This case is also different from Espinosa regarding "actual notice." In Espinosa, there was no dispute that United received sufficient notice to allow it to file a proof of claim in response. Id. at 1374. Here, BOA claims that not only did appellants fail to mail notice to an officer of BOA by certified mail, but that the notices sent by regular mail went to their Home Retention Division, customer service, and to the IT department.[9]

---

[9] The Bankruptcy Court found no evidence of bad faith by appellants in mailing the notices to the two listed addresses, and we agree. It appears that the two addresses used by appellants were provided by BOA, at some unknown time prior to the filing of appellants' petition, to be listed in the "creditor matrix." Appellants state that the "Bankruptcy Noticing Center" transmits bankruptcy notices to creditors. However, to find the act of mailing notices to an address listed with the Court as part of a "creditor matrix" complies with due process requirements, such a finding would seemingly contradict Congress's intent in fashioning Rule 7004(h). Congress placed the burden on the debtor to notify, by certified mail, an officer of the banking institution. A debtor cannot relinquish part of his responsibility to properly notify a creditor under the Rules by relying solely on the record-keeping by the Court. Appellants do not argue that the names of BOA's officers and their addresses were not readily available. Indeed, a quick internet search will likely reveal the information in a matter of minutes. See McCumber, 2012 WL 893061 at *1 (noting that there are several on-line resources that identify the individual officers of banks and credit unions by name and that "given that this information is readily available over the Internet, it does not seem burdensome for parties to locate the names of specific officers or agents when seeking to accomplish service under subsections (b)(3) or (h) of Rule 7004."). It also appears that Appellant could have easily found and served BOA's registered agent for service through the New Jersey Secretary of State but failed to do so.

While BOA, viewing the entity as a whole, did receive notice, BOA asserts that unless notice is directed to the proper department, that BOA, as a national conglomerate, can easily overlook a bankruptcy motion.  Thus, even if the notices had run their course through BOA's various offices and eventually landed on the desk of an appropriate individual, there was only a little over a month after the notices were mailed to when the confirmation hearing was held.  As happened in this case, such notification did not come in time for BOA to be apprised of the hearing.  See In re Pittman Mechanical Contractors, Inc., 180 B.R. 453, 457 (Bkrtcy.E.D.Va. 1995) ("Rule 7004(b)(3) serves to assure that a corporate defendant is put on actual notice of a lawsuit filed against it.")

Violation of the Bankruptcy Rules does not, however, automatically create a due process violation.  Instead, we look at the facts in support of appellants' method of service to determine whether notice was "reasonably calculated under all the circumstances" to apprise BOA of the bankruptcy and hearing.  See Espinosa, 130 S.Ct. at 1378 ("[D]ue process does not require actual notice ...") (quoting Jones v. Flowers, 547 U.S. 220, 225, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006)).

As stated above, appellants sent the notice by regular mail, to a non-official of BOA.  Given the size and complexity of BOA, the notice was not directed to a corporate officer or an individual who could have attended to it in a timely manner.  The

16

Court is mindful of the efficiency with which our Bankruptcy Courts strive to maintain in litigating contested bankruptcy matters. Thus, it is imperative that interested parties be properly notified in a way that is reasonably calculated for them to not only respond, but be able to respond in a timely way.  By mailing the notices to a non-officer by regular mail, appellants' method did not comport with due process requirements under these circumstances.  See Mullane, 339 U.S. at 314-15 (notice must afford reasonable time to make an appearance given the "practicalities and peculiarities" of the case").

Accordingly, we will affirm the decision of the Bankruptcy Court.  Appellants violated the Bankruptcy rules for service of the Chapter 13 confirmation plan and hearing intending to "cram" or "strip" down BOA's secured claim.  Appellants' service by regular mail to a non-officer of BOA did not provide adequate actual notice to BOA prior to the hearing.  The method of service under these circumstances did not provide notice that was reasonably calculated to apprise BOA of the bankruptcy and hearing in a timely manner and, therefore, violated due process.

**C. Res Judicata**

Appellants argue that despite any procedural irregularities, the bankruptcy plan was confirmed in a final order entered by the Bankruptcy Court thus invoking the doctrine of res judicata and prohibiting a collateral attack.

17

"Under § 1327, a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation." In re Szostek, 886 F.2d 1405, 1408 (3d Cir. 1989). However, due process violations "trump finality." In re Mansaray-Ruffin, 530 F.3d 230, 238-39 (3d Cir. 2008) (finding that adversary proceeding was mandatory and establishes a right to specific process that must be afforded and its mandatory nature was grounded in principles of due process that trumped finality) (citing In re Linkous, 990 F.2d 160, 162 (4th Cir.1993) ("[W]e cannot defer to [a Chapter 13 confirmation] order on res judicata grounds if it would result in a denial of due process in violation of the Fifth Amendment of the United States Constitution.")).

Having determined that the method of service used by appellants did not satisfy due process considerations, the doctrine of res judicata does not apply to bar BOA's challenge to the confirmation plan.

**IV.   CONCLUSION**

For the foregoing reasons, the Order entered by the Bankruptcy Court will be affirmed.

                                                   s/Noel L. Hillman
                                             NOEL L. HILLMAN, U.S.D.J.

Dated:   June 21, 2012

At Camden, New Jersey